*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-353

JANUARY TERM, 2014

| | |
|---|---|
| In re J.P., C.P., N.P. & T.W., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Chittenden Unit, |
| | } Family Division |
| | } |
| | } DOCKET NOS. 318/319/320/321-11-10 |
| | Cnjv |

Trial Judge: Kevin Griffin

In the above-entitled cause, the Clerk will enter:

Mother appeals from a superior court judgment terminating her parental rights to the minors J.P., C.P., N.P., and T.W. She contends that the trial court abused its discretion in terminating her parental rights one to two months before she was scheduled to complete a residential drug-treatment program. We affirm.

The material facts may be summarized as follows. At the time of the final hearing in this matter in May 2013, mother's four children ranged in age from thirteen to four years old. The father of the oldest three, H.P., C.P., and N.P., was represented by counsel but was not personally present at the hearing. The court found that he had played no role in the children's lives, and terminated his parental rights without opposition. The father of T.W. was also absent, and his parental rights were also terminated without opposition. Neither has appealed from the judgment.

The trial court found that the Department for Children and Families (DCF) first became involved with the family in December 2008, when mother was hospitalized with mental health issues and was unable to care for the children. The children were placed with their maternal grandmother until March 2009, when mother recovered sufficiently to resume parenting. DCF intervened again in December 2009 to provide support and assistance, as mother continued to struggle with mental health and other medical issues, and filed a CHINS petition in November 2010 based on reports that mother was abusing drugs and was unable to care for the children. Temporary custody of the children was transferred to their maternal grandmother, and mother stipulated to an adjudication of CHINS on the basis that her drug use was placing the children at risk.

Following a disposition hearing in June 2011, the trial court adopted a case plan with a goal of reunification and a plan of services for mother including participation in substance-abuse treatment and parenting programs, individual therapy, and parent-child visitation. Mother made sufficient progress to permit three of the children to return to live with her while N.P., who had significant behavioral problems, remained with his maternal grandmother. In June 2012,

however, mother tested positive for opiates following a random drug screen, acknowledged that she had used illegal drugs, and left the Intensive Home Based Services program before completing the program. The following month, DCF received a report that mother was intoxicated and had left the children with an acquaintance. DCF returned the three children to the custody of their maternal grandmother, and, due to mother's relapse, filed a motion to terminate parental rights in October 2012.

Thereafter, mother resumed working with a family support program and was granted unsupervised visits with the children provided that she continue with drug testing, remain drug and alcohol free, and remain in the family support program. In February 2013, however, mother was involved in a street incident in Burlington in which she attempted to buy prescription drugs. A few weeks later, in early March 2013, the police were called to the University Mall in South Burlington, where mother was found confused and under the influence of drugs, and was transported to the hospital. A few days later, the police investigated an assault in which mother was the victim, and in which she admitted to using marijuana and prescription drugs with the alleged assailant. Mother was terminated from the family support program in early April 2013 due to her lack of participation. She acknowledged injecting cocaine in March and April 2013, and entered the Valley Vista Residential Treatment program at the end of April. She was still enrolled in the program at the time of the final hearing in early May 2013, and testified that the she believed she was "getting a lot out of the program," which was scheduled to run another thirty to sixty days.

Based on the foregoing evidentiary record, the trial court concluded that there had been a substantial change of circumstances, and that termination of mother's parental rights was in the best interests of the children. The court acknowledged that mother had made progress at times, but also found that she had consistently relapsed into drug and alcohol abuse and high-risk behaviors, despite the provision of several years of intensive services. The court found that the children were in immediate need of consistent parenting in a safe and stable environment, that mother was no closer to being able to care for the children than when the case first started, and that she could not resume parental responsibilities within a reasonable time. The court also noted that, during this period, the children had been fortunate to find stability with their maternal grandmother, with whom they were settled and thriving, and that their well-being would be jeopardized if returned to mother. Accordingly, the court granted the petition. This appeal followed.

Mother's sole claim on appeal is that the trial court abused its discretion in determining that she could not resume parental rights and responsibilities within a reasonable period of time before affording her the opportunity to complete the Valley Vista treatment program in which she was enrolled. While acknowledging the court's finding, based on substantial evidence, of an historical pattern of improvement and relapse, mother asserts that "the historical pattern could change" and that there was no showing that a delay of several additional months would place the children at risk. As mother also acknowledges, however, what is a reasonable period of time must be measured from the children's perspective, In re B.M., 165 Vt. 331, 337 (1996), and based on this record the trial court here could reasonably conclude that their need for permanence and stability—after years of neglect—did not require further delay based on the uncertain possibility of mother's progress in another treatment program. See In re J.B., 167 Vt. 637, 640 (1998) (mem.) (upholding trial court's decision to terminate parental rights, despite evidence of mother's recent progress, "in light of the detailed evidence about the extent of mother's past behavioral problems and the lack of certainty about the extent of her progress").

Accordingly, we find no support for the claim that the trial court abused its discretion, and no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Geoffrey W. Crawford, Associate Justice